LAMOILLE,
August,
1839.

WILLIIAM H. ISAACS, administrator of BENJAMIN ISAACS, *v.*
LUKE M. SHATTUCK.

Where the statute required that advertisements, in regard to particular land taxes, should be published in the Vermont Republican, printed at Windsor, and the record in such case showed that the advertisements were published in the Vermont Republican and American Yeoman, printed at Windsor, it was held that it sufficiently appeared to be the same paper.

Where the town clerk in such record certified, that the paper was " published *at* Windsor," it was held to be a sufficient compliance with the statute, requiring him to record " the place where such paper is printed."

In what manner the clerk is to record the volume, the numbers and dates of the papers in such cases,—considered.

Where the collector's advertisement is the same in all the papers, if it be once spread upon the record, it is sufficient, and the clerk may certify that the same advertisement was inserted in the other papers, without repeating the advertisement.

The same is true of the committee's advertisement. But when either the committee or collector use different forms of advertisements in different papers, each distinct form must be recorded, *at length.*

It is not necessary that those proceedings should be recorded in the book of records of deeds. It is sufficient if they be recorded in a separate book, kept for that purpose, in which *all* similar proceedings are recorded.

The records and certificates, in such cases, must be authenticated by the official signature of the recording officer.

*Quære*—How far a formal certificate in such cases is important.

EJECTMENT, to recover the seisin and possession of lot No. 13, in the tenth range, in the town of Eden.

Plea, not guilty, and trial by jury.

Upon the trial in the county court, the plaintiff established a right to recover against the defendant, unless that right was defeated by a title in the defendant, derived from Jonas Stone, collector of a land tax in the said town of Eden, who, on the third of Feburary, 1831, executed a deed, as such collector, of the land in question, to Jonathan Elkins, under whom the defendant held the land, by deeds not objected to.

The record of a vendue sale of the land, by said collector, was offered in evidence, and the court decided that it was insufficient to support the defendant's title, and directed a verdict for the plaintiff, to which decision the defendant excepted.

The substance of said record sufficiently appears from the opinion of the court and from the objections of the plaintiff to said record. The land was sold by said collector in 1830.

It also appeared that Jonas Stone was town clerk of Eden

at the time when he was collector of said tax, and that in recording (in the town records) the committee's advertisement and a certificate of the newspapers in which the advertisement was published, he signed the same as *collector*, when he should have signed as *town clerk.*

*Willard* and *Poland*, in support of the record of the vendue, contended,

1. That when an instrument is copied into the book of records, by the clerk himself, or by some person under his authority and inspection, the record is complete without any certificate or attestation whatever.

2. That the certificate of the clerk is *prima facie* evidence to prove the record to have been made by him, or under his authority, but can have no other application, and is not conclusive, to support the record, nor is it the only evidence which can be received. *Booge* v. *Parsons*, 2 Vt. R. 460. *Summer* v. *Sebec*, 3 Greenleaf, 223.

3. That this branch of the record is entire, and that no certificate was necessary to be made, in the place where the one in question was placed, and that the next certificate is sufficient for the whole record.

*J. Sawyer*, for plaintiff, contended that the records of the vendue in question were insufficient, because,

1. The committee's and collector's notices were published in the Vermont Republican and American Yeoman. They should have been published in the Vermont Republican. Stat. vol. 1, p. 669.

2. It does not appear in what county the newspapers were published, nor the number nor dates of the newspapers.

3. Only one advertisement is recorded at length in the town clerk's office. All the advertisements should have been recorded. Stat. 667. *Clark* v. *Tucker*, 6 Vt. R. 181. 1 do. 359. 2 do. 318.

4. The notice and advertisements should be complete and entire, either in March or April, and not in parts of both months. Stat. 662.

5. No proceedings have been recorded *in the book of deeds* in the town clerk's office.

6. The notice and advertisements are recorded by the collector and not by the town clerk. Stat. 667. 1 D. Chipman's R. 259. 2 Vt. R. 318. 5 do. 19. 9 do. 382.

LAMOILLE,
*August,*
1839.

Isaacs
*v.*
Shattuck.

7. It does not appear to whom the lands, in all cases, were sold, nor for how much; and, in some cases, they were sold for more than the tax and costs, contrary to the statute. Stat. p. 663,

8. It does not appear that the account of the committee was presented to the county court in detail, nor that any notice was given that it would be presented for allowance. Stat. Vol. 160.

The opinion of the court was delivered by

REDFIELD, J.—The first objection to the record in this case, is, that the statute, in force at the time, required the advertisements to be published in the Vermont Republican, printed at Windsor, and that the record shows such advertisements to have been published in the Vermont Republican and American Yeoman. Had the name of the paper been entirely changed, it might be necessary that it should in some way appear to be the same paper in which the statute required the publication. But the assumption of some kind of surname, or *nom de guerre,* not as Scipio received the surname of Africanus, in consequence of what he *had* done, but as a mere catch, or indication of the principles which they *intend* to adopt and advocate, is of so common occurrence among newspaper publishers, as to attract no more attention from the public, than does the change of the " text " or motto, or of the type in which the name of the paper is printed. The second name of a newspaper is seldom, if ever, regarded in common parlance, and need not have been in the record. But the " addition " raises no doubt of the identity of the paper.

2. It is objected that it does not sufficiently appear, from the record, at what place this paper was published. The statute, in terms, requires the town clerk to *record* " the place where such paper was printed." Unless this is done the record is fatally defective. The record, in regard to this paper, is, " published at Windsor." It is argued that this phraseology is equivocal, there being both a town and county of Windsor; but the court think otherwise. We say *at* a town or village, but *in* a county or state. From this record no sober or sane man could seriously doubt where this paper was printed. And while we intend to be strict in regard to

titles claimed by virtue of collector's sales of land, for taxes, and to dispense with no prerequisite which the statute fairly indicates, we hope to escape the imputation of frivolous and puerile criticism.

3. The record of the volume, the numbers and the dates of the several papers, is said to be uncertain and indefinite. But this, it is apprehended, is not a well founded objection. The record is after this manner. The volume is stated, then three numbers in which it is stated the advertisements were published, and then three dates; for example, the foregoing advertisement was published in the Rutland Herald, &c., volume 4, numbers 1, 2, 3, dated June 1st, 8th, and 15th, 1800. Could any circumlocution be more definite or perspicuous? Surely not. The most simple and inexpert must know that the earliest number corresponds to the earliest date and so *pari passu ad finem.*

4. It is said the advertisements are not recorded at length. The statute requires that " the clerk shall record *the advertisements* at length." What advertisements? it may be asked. Surely, the advertisements of the collector and the committee. The collector's advertisement is always the same, in how many soever papers published, the form being given by statute. It could answer no good purpose to repeat it nine times. It is not only the same *work,* but the same edition, in some sense, and its literal identity could hardly be more evident, had the advertisement been stereotyped and all the different impressions taken from the same plate. The different papers are required to be presented at the office, that the clerk may be ascertained of the fact and be able to record it, that " the advertisement" was published three weeks successively in each of the papers required by law.

The same is generally, although not universally, true of the committee's advertisement. No form is given by statute, and they may publish the same advertisement in each of the three papers, or a different one in each, provided each contains the substance of what is required. Where the same advertisement is used, once recording it is sufficient, and where the forms are different, each different form should be separately recorded, it is apprehended, as will be found to be the case in the next vendue which we have to consider. It

is also true, doubtless, that when there are verbal differences in the collector's advertisements, in the different papers, the same reasoning will apply to them, which has just now been applied to those of the committee. But as in practice it is known that the different impressions, in the same paper, taken each successive week, are all taken from the same precise form of type, it would seem no more necessary that these different impressions should be separately recorded, than that each impression throughout the entire edition should be so recorded.

5. The proceedings of the committee and collector, in this case, were not recorded in the book of records of deeds, but in a separate book kept by the clerk for the exclusive purpose of recording the proceedings in regard to sales of land. We think this was not only as well, but in some respects more convenient than if these proceedings had been intermixed with the records of deeds. As *all* proceedings of this character were kept in a book by themselves, where they might be more readily seen, than when interspersed throughout the records of deeds, according to chronological order, it could in no sense tend to mislead any one. The statute does not require that these proceedings should be recorded in the *book,* but only in " the proper *office* for recording of deeds." The case presented is in no sense parallel in principle with that of *Sawyer et al.,* v. *Adams,* 8 Vt. R. 172.

Thus far, we have considered objections which are, in most respects, common to this title, and to the one insisted upon in the next case, and which, on that account, it becomes necessary to decide, either in this case or that of *Isaacs* v. *Wiley.*

6. We come now to consider the objection, that the record in this case is certified by " Jonas Stone, collector." Were this the case of recording of a deed, the record, being in the hand writing of the town clerk, as in *Booge* v. *Parsons,* 2 Vt. R. 456, it would be a very different matter. Here the record is not even in the town clerk's hand writing, and is of comparatively recent date. It is true that Jonas Stone was town clerk as well as collector, and we can very readily conjecture in what manner the incongruity of his certifying a record, in the capacity of collector, occurred. Still, it is not very obvious how his certifying the record, as collector, in

LAMOILLE,
*August,*
1839.

Isaacs
*v.*
Shattuck.

any manner tends to authenticate it.    It has been decided, *Spear* v. *Ditty,* 9 Vt. R. 282, that where one signs his name only, omitting the official designation, it is the same as if the signature had been omitted, so far as any official validity is concerned.    It is difficult to perceive then, how the use of a wrong designation of office should be of any greater force or validity.    We must then, in the most favorable view, consider the record in the hand writing of a stranger, and not certified by the town clerk.    This we think is not sufficient in a case like the present, where with great propriety the utmost strictness of construction has always been required.    It was not intended, I apprehend, in the case of *Spear* v. *Ditty,* 8 Vt. R. 419, to decide precisely that *no certificate* of the town clerk of the " titles, the volumes, numbers and dates" of the several newspapers, in which the advertisements were published, was necessary.    All that was necessary perhaps to be decided in that case was, that no *formal certificate* was necessary.    In this sense is the language of the learned judge, who delivered the opinion of the court in that case, I apprehend, to be understood.    The facts in that case were, if I mistake not, (and they are not stated in the report,) that the town clerk recorded the advertisement and then a statement of the paper, volume, number and dates in which it appeared, and then signed either each separate record, or at the foot of the entire record, expressly referring to all the preceding, and this was considered a sufficient authentication of the record.    But here one advertisement is spread upon the record, and it is necessary that it should some way appear, that that same advertisement was published in three different papers, and in three different numbers and dates of each paper.    These papers are required to be produced at the office of the clerk ; and for what purpose ?    That *he* may *see* that the publication has been so made.    Now if I may be allowed such a conceit, it is *his official mind* alone which is by law made capable of perceiving these facts, and his official declaration of which, upon record, is to give perpetual authenticity to those facts.    Whether this declaration be in the form of a certificate, or a simple statement, is doubtless unimportant, but it must still be official.    The question still recurs, can this be dispensed with ?    We think not in a case like the present.    What views we might entertain in a case

LAMOILLE, admitting of more latitude of construction it is not now neces-
*August*, sary to consider.  For this defect the record was correctly
1839. rejected.